MARY MILLER *v.* HAL KIRSHNER
(14438)
(14439)

PETERS, C. J., CALLAHAN, BERDON, NORCOTT and KATZ, Js.

Argued November 3, 1992—decision released March 23, 1993

*Alexander H. Schwartz,* with whom were *Richard G. Kent* and, on the brief, *Michael F. Ewing,* for the appellant in the first case, appellee in the second case (defendant).

*Helen Z. Pearl,* with whom was *John Serrano,* for the appellee in the first case, appellant in the second case (plaintiff).

NORCOTT, J. This is an appeal from the judgment of the trial court, *Hon. Joseph F. Morelli,* state trial referee, finding the defendant, Hal Kirshner, to be the father of the child of the plaintiff, Mary Miller, and ordering the defendant to pay a support arrearage, weekly child support until the child's eighteenth birthday and attorney's fees. The defendant claims that the trial court improperly: (1) admitted the results of a human leukocyte antigen (HLA) test of the defendant; (2) evaluated the credibility of the witnesses by concluding that the plaintiff's testimony was more credible than that of the defendant and by ignoring the testimony of one of the defendant's witnesses; (3) awarded attorney's fees to the plaintiff; (4) determined the defendant's liability for past child support; and (5) imposed new financial obligations on the defendant

in an amended memorandum of decision on financial issues. The plaintiff filed a separate appeal claiming that the trial court had improperly denied her motion for an allowance for attorney's fees to defend this appeal. We affirm the judgment of the trial court.

The relevant facts are as follows. On May 21, 1986, the plaintiff petitioned the Superior Court to establish the paternity of a child born to her on April 21, 1985. The parties agreed to try the issues of paternity and support separately. After a trial on the issue of paternity, the trial court found that the defendant was the father of the plaintiff's child and that he was responsible for the child's support and maintenance. The trial court then heard evidence relating to financial issues and ordered that the defendant pay weekly child support, medical expenses, child support arrearage from the time of the child's birth and attorney's fees.

The defendant appealed the judgment of the trial court regarding both paternity and support to the Appellate Court. The plaintiff then filed a corrected motion in the trial court for an allowance to defend the appeal seeking attorney's fees in advance of the appeal.[1] The trial court denied this motion with prejudice. The plaintiff appealed the denial of that motion to the Appellate Court. We transferred both the defendant's appeal and the plaintiff's appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). Further facts will be discussed as they become relevant.

---

[1] The plaintiff filed a first motion for an allowance to defend the appeal on November 4, 1991, which the trial court denied without prejudice, citing to two cases that indicated the trial court believed the motion to have been filed prematurely. The plaintiff then filed a corrected motion for an allowance to defend the appeal on November 14, 1991, which was denied with prejudice, and from which the plaintiff appeals. See footnote 9.

## I

The defendant first claims that the trial court improperly admitted into evidence the results of an HLA test performed on the defendant's blood because: (1) a contrary earlier pretrial ruling of a coordinate judge constituted the law of the case; (2) the test results were improperly admitted into evidence by retroactively applying General Statutes (Rev. to 1989) § 46b-168 (b), as amended by Public Acts 1989, No. 89-360, § 41; and (3) the testing violated his rights under the fourth and fifth amendments to the United States constitution. We disagree.

The following facts are relevant to this claim. On June 20, 1986, after the plaintiff had petitioned the Superior Court for a determination of paternity, the defendant moved for an order that the plaintiff, the plaintiff's child and the defendant submit to blood tests pursuant to General Statutes (Rev. to 1985) § 46b-168.[2] The parties subsequently agreed to submit to blood tests before an order was entered. The defendant signed a consent form that stated that the blood taken would be tested for multiple factors and if exclusion from paternity could not be demonstrated the likelihood of paternity would be calculated. These blood tests included an HLA test. The results did not exclude the defendant from paternity and determined that the likelihood of paternity was 99.9 percent.

[2] At the time the defendant moved for the blood test, General Statutes (Rev. to 1985) § 46b-168 provided in relevant part: "In any proceeding in which a question of paternity is an issue, the court, on motion of any party, may order the mother, her child and the putative father or the husband of the mother to submit to one or more blood grouping tests, to be made by a qualified physician or other qualified person, designated by the court, to determine whether or not the putative father or the husband of the mother can be excluded as being the father of the child. The results of such tests shall be admissible in evidence only in cases where such results establish definite exclusion of the putative father or such husband as such father."

The defendant subsequently filed a motion in limine for an order precluding the plaintiff from introducing the results of his HLA test into evidence on the ground that the test was conducted on his tissue whereas he had consented only to a blood test. After a hearing, the trial court, *Hon. Julius J. Kremski,* state trial referee, ordered that "[t]he plaintiff may not utilize the results of the tissue testing because the parties only agreed to a blood test."

Following this ruling, the plaintiff filed an amended motion for additional paternity testing and a motion in limine to admit the test results. At a hearing on the plaintiff's motions, the trial court heard the testimony of Herbert Silver, the physician who had supervised the blood testing procedure, who testified that HLA testing was performed on components of blood and that none of the blood components are considered to be tissue. Judge Kremski then denied without prejudice the plaintiff's amended motion for paternity testing because the plaintiff had not shown the need for additional testing. The trial court concluded that "[t]he court is not aware of any basis for considering that the . . . test contained or involved tissue testing, however, the court is not foreclosing the [defendant] from presenting evidence to the contrary at a future hearing. Further, the court is not foreclosing the [plaintiff] from presenting evidence that a need for the additional blood test requested by this motion is necessary." The trial court also denied the plaintiff's motion in limine to admit the results of the blood test stating that the issue of the admissibility of evidence was better left for the time of trial.

During the trial, the results of the HLA test were admitted into evidence by Judge Morelli over the objection of the defendant. On the basis of testimony presented, the blood test results, the defendant's offer to pay for an abortion and later to include the plaintiff's

child in his will, as well as a visual comparison of the child with the defendant, the trial court found the defendant to be the father of the plaintiff's child.[3]

## A

The defendant contends that the decision by Judge Morelli to admit into evidence the results of the defendant's HLA test effectively overturned the earlier ruling of Judge Kremski, who had granted the defendant's motion in limine to exclude the defendant's HLA test. The defendant argues that, under the doctrine of the law of the case, the earlier ruling was binding on the judge at the subsequent trial and that there was no cause for review or reversal of that ruling. We do not agree.

"The law of the case is not written in stone but is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be invoked. . . . [I]t expresses the practice of judges generally to refuse to reopen *what has been decided* and is not a limitation on their power. . . . Where a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance." (Emphasis added.) *Breen* v. *Phelps*, 186 Conn. 86, 99, 439 A.2d 1066 (1982). Nonetheless, "[w]e observed in *Breen* that

---

[3] With respect to its finding of paternity, the trial court specifically found, inter alia, that: (1) the plaintiff and the defendant had a professional working relationship that had become intimate; (2) sexual relations had commenced during the month of May, 1984, and had continued throughout the dates of July 3, 4 and 5, 1984, around which time the plaintiff's child was conceived; (3) the plaintiff did not have any sexual relations with other men during the relevant time period; (4) the plaintiff consistently claimed that the defendant was the father of her child; (5) the defendant offered to pay for an abortion when the plaintiff informed him of the pregnancy; (6) the defendant told the plaintiff that the child would be cared for and would be included in his will; and (7) the child resembled the defendant.

the law of the case doctrine is not one of unbending rigor when we said: ' "A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision." *Santoro* v. *Kleinberger,* 115 Conn. 631, 638, 163 A. 107 (1932).' [*Breen* v. *Phelps,* supra,] 98 . . . ." *Rosenblit* v. *Danaher,* 206 Conn. 125, 132–33, 537 A.2d 145 (1988).

We are not persuaded, however, that the doctrine of the law of the case is even in issue in the matter before us. The defendant's argument fails to account for Judge Kremski's second ruling, responding to the plaintiff's motion for paternity testing and motion in limine. Contrary to the defendant's contention, Judge Kremski's first ruling on the defendant's motion in limine did not state that the HLA test results would be inadmissible, but rather precluded the plaintiff from using the results of tissue testing. The second ruling on the plaintiff's motion for paternity testing, however, specifically acknowledged expert testimony that HLA testing was performed on blood, not tissue, and expressly concluded that neither party would be foreclosed from presenting further evidence at trial concerning the test's admissibility. Rather than definitively barring the admission of the HLA test results, the record reveals that Judge Kremski's rulings merely deferred to a later date a final decision on their admissibility.

The only definitive decision regarding the admissibility of the HLA test results was that of Judge Morelli at trial. The trial court's decision, consequently, did not "reopen what ha[d] been decided." *Breen* v. *Phelps,* supra, 99. We conclude that the doctrine of the law of the case does not apply. The defendant cannot, therefore, prevail in his argument that the trial court improperly reversed a pretrial ruling of a coordinate judge that stated the law of the case.

## B

The defendant next argues that the trial court improperly retroactively applied General Statutes § 46b-168, as amended by No. 89-360, § 41, of the 1989 Public Acts in admitting the results of the HLA test. At the time the parties agreed to submit to blood tests, § 46b-168 did not specifically provide for HLA testing. Rather, it stated that the court could order "blood grouping tests" and that it could admit the results of these tests into evidence only if they established definite exclusion of the putative father from paternity. See footnote 2. Public Act 89-360, however, amended § 46b-168 to authorize the court to order genetic tests, including an HLA test, in a paternity action and to admit the test results either to establish exclusion from paternity or as evidence of paternity.[4]

---

[4] General Statutes (Rev. to 1991) § 46b-168 provides as follows: "BLOOD TESTS WHEN PATERNITY IS IN DISPUTE. ASSESSMENT OF COSTS. (a) In any proceeding in which a question of paternity is an issue, the court or a family support magistrate, on motion of any party, may order the mother, her child and the putative father or the husband of the mother to submit to one or more blood grouping tests, to be made by a qualified physician or other qualified person, designated by the court, to determine whether or not the putative father or the husband of the mother can be excluded as being the father of the child. The results of such tests shall be admissible in evidence only in cases where such results establish definite exclusion of the putative father or such husband as such father.

"(b) At any proceeding in which the question of paternity is at issue the court or a family support magistrate, on motion of any party, may order genetic tests which shall mean human leukocyte antigen tests or DNA tests, to be performed unless a putative father or husband has been excluded by prior blood grouping tests. Such tests shall be made by a hospital, accredited laboratory, qualified physician or other qualified person designated by the court, to determine whether or not the putative father or husband is the father of the child. The results of such tests shall be admissible in evidence to either establish definite exclusion of the putative father or husband or as evidence that he is the father of the child.

"(c) The costs of making tests provided by this section shall be chargeable against the party making the motion, provided if the court finds that such party is indigent and unable to pay such costs, such costs shall be paid by the state. If the costs of making such tests are paid by the state and

The essence of the defendant's argument appears to be that, because the results of the HLA test did not definitively exclude paternity, they could have been admitted only pursuant to a retroactive application of § 46b-168 as amended. The defendant contends that this retroactive application of the statute is unwarranted because the statutory amendment affects the defendant's substantive rights. The defendant's reliance on the amended § 46b-168 as the sole basis for admission of the HLA test results, however, is misplaced.[5]

At the time the parties submitted to the blood tests, § 46b-168 defined the body of evidence, blood grouping tests, that would be inadmissible in a paternity action unless the test results definitively excluded the defendant as the father of the child. Section 46b-168 did not, however, govern the admissibility of the results of all paternity tests; rather, it barred blood grouping tests from being introduced into evidence if they did not meet the statutory criterion. Prior to the enactment of Public Act 89-360, however, this court had concluded that HLA tests were not blood grouping tests within the meaning of § 46b-168. Their admissibility into evidence, therefore, was not governed by § 46b-168 but, rather, by common law rules of evidence. *Moore* v. *McNamara,* 201 Conn. 16, 28–29, 513 A.2d 660 (1986).

In *Moore,* this court noted that the legislature, when § 46b-168 was originally passed, did not contemplate technology as accurate as HLA testing has proven to be. We stated that "it appears unlikely that the 1957 legislature intended its statute to prohibit the admission in evidence of test results obtained by then unknown techniques such as HLA testing capable of achieving

---

the respondent making the motion is subsequently adjudicated to be the father of the child, such respondent shall be liable to the state for the amount of such costs."

[5] Because of our disposition of this claim, we do not decide whether No. 89-360 of the 1989 Public Acts may be applied retroactively.

a decidedly higher probability of exclusion." Id., 29. Although in *Moore* we did not reach the issue of whether HLA testing was admissible under common law evidentiary rules regarding scientific techniques; see *Frye* v. *United States,* 293 F. 1013 (D.C. App. 1923); we did note that "combined blood grouping and HLA testing has attained general acceptance in the scientific community as a means of testing for paternity." *Moore* v. *McNamara,* supra, 31.

At the time of trial in this case, therefore, judicial decisions had supported the admissibility of HLA tests and had held that the admissibility of such tests was not controlled by the original provisions of § 46b-168. See id.; *Miller* v. *Miller,* 40 Conn. Sup. 66, 69, 481 A.2d 428 (1984); *Hogan* v. *Roberge,* Superior Court, judicial district of Hartford-New Britain, geographical area number thirteen, Docket No. FA 13-425 (November 24, 1984) (11 Conn. L. Trib. No. 21, pp. 10, 12 [1985]); see also *Palomba* v. *Gray,* 208 Conn. 21, 36–37, 543 A.2d 1331 (1988) (*Shea, J.,* concurring) ("[t]he use of these new techniques [HLA testing] has raised to such a high level the ability of the scientific community to identify the father of a child whose paternity is disputed that the resolution of such an important issue should no longer be had without such scientific testimony"). Consequently, the trial court, at the time of this action, was not restricted to admitting the HLA tests pursuant to the amended language of § 46b-168 and the record contains no indication that the court relied on a retroactive application of § 46b-168 as amended to authorize the admission into evidence of the HLA test results. As the defendant has raised no objection to the admissibility of the HLA test under common law rules of evidence; *Moore* v. *McNamara,* supra, 30; we conclude that the test results were properly admitted.

The defendant maintains that, at the time he consented to the blood test, he believed it would be limited to blood grouping tests and that he did not consent to

an HLA test. Such a belief, however, is no basis for excluding the test results from evidence. At any future trial, the court could order the same test under § 46b-168 as amended and the results would be admissible. See, e.g., id., 34. We conclude, therefore, that the defendant has failed to establish his second claim, that the trial court improperly retroactively applied § 46b-168 as amended to him.

## C

The defendant next argues that the HLA test results were improperly admitted into evidence because the performance of the test violated the defendant's rights under the fourth and fifth amendments to the United States constitution. The defendant maintains that he did not consent to a tissue test, which he claims an HLA test is, and that the test, therefore, violated his fourth amendment right to be free from unwarranted intrusions and his fifth amendment right against self-incrimination.

The facts of this case do not support the defendant's claim. The defendant moved for and voluntarily submitted to a blood test. The consent form signed by the defendant stated "I have been informed that the blood collected from me will be tested for multiple factors and that if an exclusion cannot be demonstrated the likelihood of paternity will be calculated." The defendant contends that he believed his consent to mean that he was submitting only to those tests that were admissible under § 46b-168 as it provided at the time he agreed to the test. We have concluded above, however, that § 46b-168 did not define the full scope of paternity tests routinely performed and admissible into evidence, and we see no reason to limit the defendant's consent to that which he subjectively believed the law was at the time he signed it. In *Moore* v. *McNamara,* supra, 31, this court noted that the discovery of the

HLA system presented the impetus to use HLA test data as *evidence of paternity* and "that the decided trend in other jurisdictions [was] toward admission of HLA test results as *evidence of paternity*." (Emphasis added.)

We conclude that when the defendant consented to have his blood tested not simply to establish exclusion from paternity but also to calculate the likelihood of paternity, such consent encompassed HLA testing. Therefore, the defendant's argument that his constitutional rights under the fourth and fifth amendments were violated because he did not consent to an HLA test is without merit.

## II

The defendant next argues that the trial court improperly found that the plaintiff's testimony was more credible than his and improperly ignored the testimony of defense witness Naomi Levine. We disagree.

At trial, the plaintiff testified that she and the defendant had begun seeing each other socially and first had sexual relations sometime in May, 1984. The plaintiff also testified that she had been with the defendant continuously between July 3 and July 5, 1984, that they had had sexual relations several times on those days and that her child had been conceived sometime during that three day period. The plaintiff further testified that she had had no other sexual partners during the four months preceding and the four months succeeding this period.

The defendant testified that he did have sexual relations with the plaintiff in May, 1984, but stated that he had not been with the plaintiff at any time between July 3 and July 5, 1984. He also testified that he had not had sexual relations again with the plaintiff until after the baby was born. The defendant further testi-

fied that he had been either with Levine and her daughter or at his place of business between July 3 and July 5, 1984. Levine, with whom the defendant had lived from 1983 to 1984, also testified through deposition that the defendant had been with her and her daughter on the days in question.

In addition to this testimony, the trial court also heard the testimony of Herbert Silver, the physician who supervised the blood testing procedure, who testified as an expert witness for the plaintiff regarding paternity testing, and Steven Reeders, a physician specializing in human genetics, who testified as an expert witness for the defendant regarding the unreliability of the paternity tests admitted into evidence. The trial court concluded after hearing all the evidence that "the evidence and testimony of the plaintiff [was] more believable than that of the defendant."

The defendant contends on appeal that the trial court improperly found the plaintiff to be more credible than him. The defendant recounts at length every detail of the plaintiff's testimony that would point to her lack of credibility and suggests that the defendant's expert witness was more credible because he was a disinterested party. In effect, the defendant claims that, when faced with inconsistent testimony, the trial court improperly chose the testimony of one side over that of the other.

"Where there is conflicting evidence, as claimed by the [defendant], we do not retry the facts or pass upon the credibility of the witnesses." (Internal quotation marks omitted.) *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.,* 190 Conn. 371, 404, 461 A.2d 422 (1983). "The trier of the facts determines with finality the credibility of the witnesses and the weight to be accorded their testimony." (Internal quotation marks omitted.) *State* v. *Robinson,* 213 Conn.

243, 256, 567 A.2d 1173 (1989); see *Faiola* v. *Faiola,* 156 Conn. 12, 15, 238 A.2d 405 (1968). The trial court heard the testimony of all of the witnesses and rendered its judgment accordingly. We will not usurp the fact-finding function of the trial court and retry the case on appeal as the defendant would have us do.

Moreover, we reject the defendant's contention that the court improperly ignored Levine's testimony, which corroborated the defendant's testimony that he was with Levine, not the plaintiff, between July 3 and July 5. The trial court stated in its memorandum of decision, "[t]aking into consideration *all the evidence,* exhibits and facts found, the court finds the defendant guilty as alleged in the complaint." (Emphasis added.) The defendant provides no basis for asserting that the trial court purposefully ignored any of the evidence presented at trial. We conclude that when the trial court stated that it considered *all* the evidence before it, it did precisely that. These arguments of the defendant, therefore, also fail.

### III

The defendant next argues that the trial court improperly awarded the plaintiff attorney's fees because there was insufficient evidence to support the award. During the trial on financial issues, the plaintiff submitted a sworn affidavit indicating that she owed counsel $20,000 at the time of trial and attached a supporting itemization.[6] The defendant argued that the

---

[6] The plaintiff was entitled to seek attorney's fees from the defendant by virtue of General Statutes § 46b-171, which provides in relevant part: "If the defendant is found to be the father of the child, the court or family support magistrate shall order him to stand charged with the support and maintenance of such child, with the assistance of the mother if she is financially able . . . to be reasonably commensurate with the financial ability of the defendant, and to pay a certain sum periodically until the child attains the age of eighteen years; and the court or family support magistrate shall order him to pay the amount thereof to the complainant . . . and shall

plaintiff was barred from seeking attorney's fees because she had failed to produce expert testimony that the fees were reasonable. In its memorandum of decision on financial issues, the trial court awarded the plaintiff $7000 in attorney's fees. The court stated that "[t]he court on its own has a general knowledge of what would be a reasonable fee under the facts, circumstances and workload of this case. It finds this amount to be fair and reasonable."

The defendant claims that the trial court improperly awarded attorney's fees without conducting a hearing to consider evidence from an expert witness with respect to the reasonableness of the hours and monetary amount of the fees requested. The defendant does not claim that he was not permitted to introduce evidence regarding the unreasonableness of the fees requested, but that the plaintiff failed to produce evidence, through an expert witness, of their reasonableness. The defendant argues, therefore, that without a proper evidentiary foundation, an award of attorney's fees could not be made. We disagree.

General Statutes § 46b-171 governs permissible financial orders in a paternity action and provides that the court "shall grant execution for . . . costs of suit taxed as in other civil actions, together with a reasonable attorney's fee . . . ." The defendant claims that there must be a full evidentiary showing when attorney's fees are sought under § 46b-171, similar to that required under General Statutes § 46b-62, which governs attorney's fees in divorce proceedings.[7]

grant execution for the same and costs of suit taxed as in other civil actions, together with a reasonable attorney's fee; and may require him to become bound with sufficient surety to perform such orders for support and maintenance. . . ."

[7] Under General Statutes § 46b-62, the trial court may order "either parent to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82."

General Statutes § 46b-82 provides in relevant part: "In determining whether alimony shall be awarded, and the duration and amount of the

We decline to read such an evidentiary requirement into § 46b-171 which, unlike § 46b-62, does not expressly state that the trial court must consider the respective financial abilities of the parties or any other statutory criteria in awarding attorney's fees. Moreover, even § 46b-62 does not require expert evidence regarding the reasonableness of attorney's fees. The trial court may exercise its discretion in determining the amount of fees allowable; *Donato* v. *Corrado,* 22 Conn. App. 583, 585–86, 578 A.2d 161 (1990); and the plaintiff need not introduce expert testimony to prove the reasonableness of the fee request.

"Courts have a general knowledge of what would be a reasonable attorney's fee for services which are fairly stated and described." *Appliances, Inc.* v. *Yost,* 186 Conn. 673, 680, 443 A.2d 486 (1982). "[C]ourts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees. . . . The court [is] in a position to evaluate the complexity of the issues presented and the skill with which counsel had dealt with these issues." *Bizzoco* v. *Chinitz,* 193 Conn. 304, 310–11, 476 A.2d 572 (1984). The trial court properly relied on the financial affidavit before it and on its general knowledge and involvement with the entire trial to ascertain a reasonable attorney's fee. The defendant's argument is without merit.

---

award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

This court has held that, in a divorce proceeding, an award of attorney's fees should not be made until after a trial court has heard evidence relating to the financial resources of the parties in light of the statutory criteria. *Arrigoni* v. *Arrigoni,* 184 Conn. 513, 519, 440 A.2d 206 (1981).

## IV

The defendant next claims that the trial court improperly determined his liability for past child support. The defendant first argues that the trial court improperly retroactively applied General Statutes (Rev. to 1989) § 46b-160, as amended by No. 89-360, § 44, of the 1989 Public Acts,[8] to award the plaintiff child support from the date of the child's birth. The defendant also argues that the trial court failed to take into account the defendant's lengthy period of unemployment in determining the child support arrearage. We disagree with both of these claims.

At trial on the financial issues, the defendant testified that he had been unemployed for approximately four years, from 1987 to 1990. The defendant's sworn financial affidavit, however, reflected that he had earned $208,000 in 1986, and the defendant testified that in 1991 he was again employed and was earning $150,000 a year with the possibility of bonuses. Also, during his period of unemployment, the defendant testified that he had earned income as a self-employed consultant amounting to approximately $130,000. The trial court ordered the defendant to pay a child support arrearage of $99,600, finding that the defendant owed child support from April 21, 1985, the day the child was born.

[8] General Statutes (Rev. to 1989) § 46b-160, as amended by Public Acts 1989, No. 89-360, § 44, provides in relevant part: "(a) Proceedings to establish paternity of a child born or conceived out of lawful wedlock, including one born to, or conceived by, a married woman but begotten by a man other than her husband, shall be instituted by a verified petition of the mother or expectant mother, with summons and order, filed in the superior court for the judicial district in which either she or the putative father resides . . . . Such petition may be brought at any time prior to the child's eighteenth birthday, provided liability for past support shall be limited to the three years next preceding the date of the filing of any such petition. . . ."

The defendant claims that the trial court improperly applied § 46b-160, as amended by Public Act 89-360, to hold the defendant liable for past child support from the date of the child's birth rather than from three years preceding the granting of the paternity petition. At the time the paternity action was commenced, § 46b-160 held the putative father liable for past child support "limited to the three years next preceding the *granting* of any such petition." (Emphasis added.) General Statutes (Rev. to 1985) § 46b-160, as amended by Public Acts 1985, No. 85-548, § 3. In 1989, however, this provision was amended by Public Act 89-360 to hold the putative father liable for past child support "limited to the three years next preceding the *date of the filing* of any such petition." (Emphasis added.) The defendant contends that holding him liable for an additional two and one-half years of past child support affects his substantive rights, and that the amended § 46b-160 cannot therefore be retroactively applied.

In *Moore* v. *McNamara,* supra, 22, we stated that "[i]t is a rule of construction that legislation is to be applied prospectively unless the legislature clearly expresses an intention to the contrary. The rule is rooted in the notion that it would be unfair to impose a substantive amendment that changes the grounds upon which an action may be maintained on parties who have already transacted or who are already committed to litigation. . . . In civil cases, however, unless considerations of good sense and justice dictate otherwise, it is presumed that procedural statutes will be applied retrospectively. . . . Procedural statutes have been traditionally viewed as affecting remedies, not substantive rights, and therefore leave the preexisting scheme intact." (Citations omitted.)

Public Act 89-360, § 44 did not create the right of a mother to receive support for a child born out of wedlock; it merely expanded the period of time for which

such support could be received. The amendment to § 46b-160, therefore, was not directed to the right itself, but to the remedy. This type of amendment is generally a distinctly procedural matter. See, e.g., *Roberts* v. *Caton,* 224 Conn. 483, 488, 619 A.2d 844 (1993); *Jones Destruction, Inc.* v. *Upjohn,* 161 Conn. 191, 196, 286 A.2d 308 (1971); *Lavieri* v. *Ulysses,* 149 Conn. 396, 401, 180 A.2d 632 (1962).

"The rule that statutes which are general in their terms and affect matters of procedure can be applied retroactively, however, does not include a statute which, though in form providing but a change in remedy, actually brings about changes in substantive rights." *American Masons' Supply Co.* v. *F.W. Brown Co.,* 174 Conn. 219, 223, 384 A.2d 378 (1978). The defendant argues that the expansion of the period of time for which he is liable for past child support, thus increasing his monetary liability, affects his substantive rights. Such an argument, however, would require this court to recognize a right to a monetary cap on liability. This we will not do.

We have held that, unless considerations of good sense and justice dictate otherwise, provisions affecting the period of limitation on liability may be retroactively applied. See *Moore* v. *McNamara,* supra, 22–25 (amendment to General Statutes § 46b-160 expanding limitations period for right to bring paternity action from three to eighteen years applied retroactively); see also *Jones Destruction, Inc.* v. *Upjohn,* supra, 195–96. Section 46b-160 as amended does not express an intent contrary to retroactive application, and we are unpersuaded that its retroactive application would work an injustice on the defendant. We conclude that § 46b-160 as amended may be applied retroactively and that the trial court properly awarded the plaintiff past child support from the time of the child's birth.

The defendant also argues that the trial court improperly made an award for past child support without accounting for his period of unemployment. The defendant suggests that the trial court could not have made a similar award had he been unemployed at the time of the trial, and that the support award should therefore have been reduced automatically because he had been unemployed for a period of time before the trial began.

General Statutes § 46b-171 provides in part that "[i]f the defendant is found to be the father of the child, the court . . . shall order him to stand charged with the support and maintenance of such child . . . to be reasonably commensurate with the financial ability of the defendant . . . . Any order for the payment of support for any such child may at any time thereafter be set aside, altered or modified by any court issuing such order upon a showing of a substantial change in the circumstances of the defendant or the mother of such child . . . ." Once the defendant is found to be the father of the child, the order setting the amount and duration of the support of the child is a matter within the sound discretion of the trial court. This order will not be disturbed on appeal unless the trial court abused its discretion. *Turner* v. *Richardson,* 147 Conn. 423, 426, 162 A.2d 177 (1960); *Hellman* v. *Karp,* 93 Conn. 317, 324, 105 A. 678 (1919).

The trial court heard evidence of the defendant's financial ability, including evidence of: (1) the defendant's period of unemployment; (2) the defendant's income for the years both prior and subsequent to the period of unemployment; and (3) other income received by the defendant during the period of unemployment. The defendant has not pointed to any evidence that establishes an abuse of discretion. We conclude that the trial court properly determined the defendant's liability for past child support.

## V

The defendant's final claim is that the trial court's amended memorandum of decision on financial issues improperly imposed new obligations on him. The defendant argues that several of the relief provisions in the trial court's amended decision were not included in the original memorandum and are more favorable to the plaintiff, thereby imposing new substantive obligations on the defendant. We disagree.

The following facts are relevant to this claim. After a trial on financial matters, the trial court issued a memorandum of decision that held the defendant liable for: (1) $300 per week child support to be paid on a biweekly basis; (2) one half of the child's unreimbursed medical and dental expenses to date; (3) a child support arrearage of $99,600; (4) one half of the premiums for medical and dental insurance for the child; and (5) $7000 in attorney's fees.

Paragraph four of the trial court's original memorandum provided as follows: "In accordance with the provisions of General Statutes § 46b-171, the *plaintiff* is ordered 'to become bound with sufficient surety to perform such orders for support and maintenance.' Thus, the *plaintiff* is ordered to execute a mortgage on [the] *defendant's* home to secure payment of the arrearage owed to her for almost 6-1/2 years worth of child support. It is further ordered that said minor be [the] irrevocable beneficiary on sufficient life insurance to secure the defendant's current child support obligation until the child's eighteenth birthday. The arrearage amount to be not less than for the total number of weeks from April 21, 1985 to the date hereof. Total due $99,600.00." (Emphasis added.)

The plaintiff subsequently filed a motion to correct and clarify, which asked the trial court to correct the

obvious error ordering the plaintiff to provide sufficient surety to perform the support awards, and also requested articulation of the award of past child support secured by a mortgage to be executed by the defendant. Specifically, the plaintiff sought articulation as to whether the obligation for past child support would be due on demand or pursuant to a schedule of payments that included interest.

The trial court then issued an amended memorandum of decision on financial issues to clarify the provisions of paragraph four. The amended memorandum rectified the error as to which party was bound to provide surety for the support orders and noted that the $300 per week child support would continue until the child's eighteenth birthday. The amended memorandum further stated: "The court finds there is due and owing to the plaintiff an arrearage for support of said child from April 21, 1985 to date hereof the sum of $99,600.00. The court orders the defendant to pay the said amount plus interest at the rate of 5% per annum, when due, by executing a promissory note payable to the plaintiff secured by a mortgage on [the] defendant's home located at 25 Lords Highway, Weston, Connecticut. Said amount shall be paid as follows: $3,500.00 plus interest from date September 18, 1991 and a like sum plus interest each six months thereafter until fully paid. The defendant shall have the right to pay the entire balance amount together with interest due at any time and said mortgage shall contain the usual commercial mortgage clauses including payment of reasonable attorney fees to the plaintiff in the event of default in the payment hereof in accordance with its tenor."

The defendant contends that the trial court's amended memorandum of decision was improper because it substantially changed the defendant's obligations and because neither party was given an opportunity for oral argument. The defendant claims that the trial court

entered new orders because it: (1) provided that child support would continue until the child's eighteenth birthday; (2) required the defendant to execute a promissory note secured by a mortgage on his home; (3) required a payment of $3500 plus interest every six months for arrearages; and (4) released the defendant from the obligation of naming the child as an irrevocable beneficiary on the defendant's life insurance. The defendant argues that these amended orders are more favorable to the plaintiff and that they fail to maintain the relative positions of the parties after the original order.

" 'An articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification.' *State* v. *Wilson,* 199 Conn. 417, 435, 513 A.2d 620 (1986); *Rostain* v. *Rostain,* 213 Conn. 686, 694–95, 569 A.2d 1126 (1990)." *Carothers* v. *Capozziello,* 215 Conn. 82, 114, 574 A.2d 1268 (1990). '[P]roper utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal." *Barnes* v. *Barnes,* 190 Conn. 491, 494, 460 A.2d 1302 (1983). An articulation, however, "is not an opportunity for a trial court to substitute a new decision [or] to change the reasoning or basis of a prior decision." *Koper* v. *Koper,* 17 Conn. App. 480, 484, 553 A.2d 1162 (1989); see *Eichman* v. *J & J Building Co.,* 216 Conn. 443, 458, 582 A.2d 182 (1990).

Under the authority of § 46b-171, the court has broad discretion to craft an order to assure proper provisions for the support of the child. *Turner* v. *Richardson,* supra, 426. A comparison of the trial court's two memoranda of decision on financial issues persuades us that the trial court did not impose new substantive obligations on the defendant but rather clarified the method by which the original obligations would be met. Such

clarification is proper on a motion for articulation. We conclude that the trial court's amended memorandum of decision on financial issues did not improperly substitute a new decision or change the substantive provisions of the trial court's original order. The defendant's final claim, therefore, is also without merit.

## VI

The plaintiff claims in her appeal that the trial court improperly denied her corrected motion for an allowance to defend the appeal. In our view, the plaintiff's primary challenge to the trial court's ruling was resolved by the trial court's response to her motion for articulation of the ruling, which was rendered while this appeal was pending.[9] We therefore address the plaintiff's claim only to the extent that it challenges the trial court's deferral of the issue of determining attorney's fees for defending the appeal until after the appeal is concluded.[10]

---

[9] The plaintiff's motion for an allowance to defend the appeal was dated February 21, 1990, and filed on November 4, 1991. Noting a mistake in the date on the motion, the plaintiff filed a corrected motion for an allowance to defend the appeal on November 14, 1991.

The trial court ruled on both motions on November 29, 1991. It denied the first motion *without prejudice,* citing as the basis for its ruling *Conservation Commission* v. *Price,* 5 Conn. App. 70, 496 A.2d 982 (1985), and *Crowther* v. *Gerber Garment Technology, Inc.,* 8 Conn. App. 254, 513 A.2d 144 (1986). These cases indicated that the trial court had denied the plaintiff's motion because it believed it was premature, and that attorney's fees should be determined after the appeal was concluded. The trial court then denied the plaintiff's corrected motion *with prejudice,* citing to the same cases. Because of the inconsistency of these rulings, the plaintiff sought an articulation, asking which decision should apply. The trial court's articulation was rendered while this appeal was pending, and indicated that the court had considered its denial without prejudice of the plaintiff's first motion controlling and that it had intended to defer the issue of attorney's fees until after the appeal was concluded. It is clear, therefore, that the trial court did not deny the plaintiff the opportunity to receive attorney's fees for the appeal altogether, but rather that it chose to defer the issue.

[10] The defendant claims that the plaintiff's claim is essentially one of timing, and that the plaintiff challenges the trial court's decision not to award

Section 46b-171 provides in pertinent part that the trial court may order the defendant in a paternity action to stand charged with "costs of suit taxed as in other civil actions, together with a reasonable attorney's fee . . . ." Although the express language of the statute does not distinguish attorney's fees for trial from those for an appeal, it does authorize the trial court to charge the defendant with the attorney's fees affiliated with the "suit." We conclude that the term "suit" in the statute encompasses the fees for both the trial and the appeal. See, e.g., *Crowther* v. *Gerber Garment Technology, Inc.*, 8 Conn. App. 254, 271–72, 513 A.2d 144 (1986) (reasonable attorney's fees allowed in a "civil action" included attorney's fees incurred at the appellate level); *Conservation Commission* v. *Price*, 5 Conn. App. 70, 74, 496 A.2d 982 (1985) (use of the term "action" in General Statutes § 22a-44 construed to allow attorney's fees incurred both at trial and appeal).

In dissolution of marriage proceedings, we have held that the trial court may exercise its discretion to award attorney's fees to defend an appeal. *Blake* v. *Blake,* 211 Conn. 485, 488–89, 560 A.2d 396 (1989); *Darak* v. *Darak,* 210 Conn. 462, 477, 556 A.2d 145 (1989). We have stated that this discretion of the trial court ensures "that a lack of funds does not deprive one party of his or her rights." *Darak* v. *Darak,* supra. We see no reason why the trial court's authority to award attorney's fees in a paternity action should not also encompass authority to award fees to defend an appeal. We conclude, moreover, that § 46b-171 grants the trial court broad discretion not only in determining the amount of fees allowed; *Donato* v. *Corrado,* 22 Conn. App. 583,

attorney's fees for the appeal until after the appeal. The defendant argues that this claim is moot because the appellate process will terminate at the same time this court decides the issue and therefore we cannot offer the plaintiff any practical relief. A plaintiff's right to attorney's fees before rather than after the prosecution of an appeal presents, however, a question of law that is justiciable.

585–86, 578 A.2d 161 (1990); but also in determining when an award of attorney's fees will be made. We do not consider the decision of the trial court to defer the determination of an award of attorney's fees for the appeal until after the proceedings are concluded to be an abuse of the court's discretion.

We affirm the judgment and remand the case to the trial court for a determination of an award of attorney's fees to the plaintiff for the appeal.

In this opinion the other justices concurred.