[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff has moved in this paternity action for an order of current child support to be paid by the defendant and for an order for past due support for the three years prior to the bringing of this action.[1] The defendant disputes the amount of the current order sought by the plaintiff and objects to the retroactive imposition of a child support order.
On May 15, 1998, the plaintiff filed this paternity action against the defendant seeking a determination that the defendant was the father of the minor child, Winston Alexander Lee,[2] born to the plaintiff on April 8, 1993 and asking that the defendant be ordered to pay child support. On November 22, 1999, the court, McLachlan, J., found that the defendant was the father of Winston. The plaintiff has now moved that the defendant be ordered to pay current child support and, pursuant to General Statutes § 46b-160[3], past child support retroactive to May 15, 1995. Although the plaintiff and the child reside in Texas and the defendant now resides in Arizona, both parties agreed that the CT Page 7862 court should apply Connecticut law in determining the issue of child support.[4] A recitation of additional facts is necessary to fully understand the circumstances of the parties.[5]
While the defendant is the father of Winston, Winston was conceived and born while the plaintiff was married to Lance Pagliaro. Despite knowing that he was not Winston's father, Pagliaro helped the plaintiff raise Winston and he represented to the world that he was Winston's father. The plaintiff also has another child, Albert, born during her marriage to Pagliaro for whom Pagliaro is not the father. The father of Albert is Robert Randall Kelso.
From Winston's birth on April 8, 1993 until June 2, 1996, Winston lived with the plaintiff and Pagliaro in Texas. During this period of time, Pagliaro was the sole financial support of the family and paid all the expenses of both the plaintiff and Winston.
The plaintiff and Pagliaro experienced marital difficulties and physically separated on June 2, 1996. After the separation, Winston's living situation became peripatetic. From June 2, 1996 until approximately June 23, 1996, Winston lived solely with the plaintiff. In the latter part of June 1996, Pagliaro initiated a divorce action in Texas against the plaintiff. Robert Randall Kelso, the father of Albert, was also a party in that action. On or about June 24, 1996, Pagliaro was granted sole temporary managing conservator of Winston by the Texas court and Winston returned to live with Pagliaro.
In July 1996, Kelso was awarded temporary sole managing conservator of Winston and Winston resided with him from July 1996 until September 1996. In September 1996, the situation changed once again, with Pagliaro resuming temporary sole managing conservatorship of Winston. Winston returned to live with Pagliaro from September 1996 through July 17, 1997. In April 1997, the plaintiff, Pagliaro and Kelso were made temporary joint managing conservators of Winston, with Pagliaro retaining physical custody of Winston. On July 17, 1997, the plaintiff, Pagliaro and Kelso entered into an agreement in the court in Texas under which each remained temporary joint managing conservators of Winston and Winston's physical custody was split equally between the plaintiff, Pagliaro and Kelso. Pursuant to this agreement, Winston lived one-third of the time with the plaintiff, Pagliaro and Kelso and each of them was obligated to financially support Winston while he was in their respective care. This arrangement continued in effect until November 22, 1999. Since November 22, 1999, the child has primarily resided with the plaintiff.
On April 18, 2000, the court in Texas entered a final decree of divorce with respect to the plaintiff's marriage to Pagliaro. The final decree CT Page 7863 appointed the plaintiff, Pagliaro and Kelso joint managing conservators of Winston, designated Winston's primary residence with the plaintiff and awarded specified rights of visitation to Pagliaro and Kelso. The plaintiff was also given the exclusive right to receive periodic payments for the support of Winston and, together with Kelso, she was awarded the right to represent Winston in legal actions.
With respect to the issue of the current child support to be paid by the defendant, the plaintiff claims that the presumptive current child support amount pursuant to the child support guidelines is $254 weekly and the court should deviate upward because the plaintiff pays extraordinary medical expenses for Winston. The defendant submitted a child support guideline worksheet that shows a presumptive current child support amount of $222 weekly. The defendant further contends that the court should deviate downward from this amount because the Texas divorce decree obligates Pagliaro to pay for Winston' medical insurance.
The child support guidelines worksheet submitted by the plaintiff and the defendant use the same gross weekly income for the defendant of $2,228. The plaintiff however shows a net weekly income for the defendant of $1,620 while defendant shows a net weekly income of $1,381. The difference is due to two additional deductions taken by the defendant: (1) a health insurance premium payment of $23 weekly and (2) an imputed support obligation for a qualified child of $213.
I find based on the evidence presented that the plaintiff has a present earning capacity of $705 net weekly income and that she has had such an earning capacity since October 1999 when she opened her own law practice.[6] I also find that the defendant's current net weekly income prior to the deduction of any imputed support obligation for a qualified child is $1,620.
The defendant is not entitled to take a weekly deduction of $23 for health insurance premium payments because his financial affidavit does not show such an expense and no other evidence of such payments was presented by the defendant. The defendant is however entitled to take a deduction of $213 from of his gross income as an imputed support obligation for a qualified child.
Under the Child Support and Arrearage Guidelines (guidelines),[7]
either parent may deduct from his or her gross income the amount of an imputed support obligation for a qualified child. Regs., Conn. State Agencies § 46b-215a-2a(e). For the purposes of this case, a qualified child is one (1) who is currently living in the same household with the parent, if such parent is the child's legal guardian; (2) who is a dependent of the parent; (3) who is not a subject of the support CT Page 7864 determination; and (4) for whom the parent has not claimed a deduction for court-ordered child support. Regs., Conn. State Agencies §46b-215a-2a(e)(1)(A).
The defendant married in October 1996. He has one child issue of the marriage, Trevor Hayden Jones, who was born July 26, 1999. Trevor currently lives with the defendant and has done so since his birth. Trevor is a dependent of the defendant, is not a subject of the pending support determination and has not been claimed as a deduction for court ordered child support pursuant to the child support guidelines. Accordingly, the defendant may deduct from his gross income the amount of an imputed support obligation for Trevor as a qualified child pursuant to the child support guidelines. Pursuant to the guidelines, the amount of the deduction in this case is $213.
A deduction of $213 from the defendant's net weekly income of $1,620 leaves an adjusted net weekly income for purposes of calculating the appropriate child support amount of $1,407. Based on the parties net weekly incomes of $705 and $1,407, the child support guidelines indicate that the presumptive amount for current child support payable by the defendant to the plaintiff is $226 weekly.
The plaintiff asks the court to deviate upward from this amount based on the deviation criteria contained in the child support guidelines for extraordinary expenses for the care and maintenance of the child. The plaintiff testified that she presently incurs expenses totaling $50 monthly for asthma medication for Winston. She claims that these expenses justify a deviation from the presumptive child support amount.
Section 46b-215a-3(a) of the Regulations of Connecticut State Agencies provides: "The current support, health care coverage contribution, and child care contribution amounts calculated under section 46b-215a-2a of the Regulations of Connecticut State Agencies . . . are presumed to be the correct amounts to be ordered. The presumption regarding each such amount may be rebutted by a specific finding on the record that such amount would be inequitable or inappropriate in a particular case . . . Only the deviation criteria described in this section establish sufficient bases for such findings." One of the deviation criteria set forth in the guidelines is "extraordinary expenses for care and maintenance of the child." Regs., Conn. State Agencies §46b-215a-3(a)(2). It provides that unreimbursable medical expenses "when found to be extraordinary and to exist on a substantial and continuing basis" may justify a deviation from presumptive support amounts. I do not find an expense of $50 per month for asthma medication to be extraordinary either in amount or type to warrant a deviation from the presumptive amount for child support. CT Page 7865
The defendant requests a deviation from the presumptive amount for current child support because the plaintiff's former husband, Lance Pagliaro, provides medical insurance for Winston pursuant to the Texas divorce decree. The provision of medical insurance by Pagliaro, however, justifies a deviation from the guideline requirements for health care coverage, not current child support.
The guidelines determine the provision of child support, health care coverage and child care contributions. Pursuant to the guidelines, each child support award must include a provision by either parent to contribute to the health care coverage of the child. Regs., Conn. State Agencies § 46b-215a-2a(g). Health care coverage under the guidelines encompasses two items: (1) medical and dental insurance coverage; and (2) payment of unreimbursed medical expenses. Regs., Conn. State Agencies § 46b-215a-2a(g)(1) and (3). Since Pagliaro is required by a Texas court order to furnish medical and dental insurance coverage for Winston, it is appropriate and equitable in this instance to deviate from the guideline requirement that one of the child's parents provide such coverage. The court ordered provision of health insurance for Winston by Pagliaro constitutes an "equitable factor" that justifies deviation. Regs., Conn. State Agencies § 46b-215a-3(b)(6)(C).[8]
The plaintiff further requests that the child support order be made retroactive to May 15, 1995. The defendant asserts that he should not be ordered to pay child support for any period of time when the child resided with Pagliaro or when Pagliaro provided financial support to the child.
Section 46b-160(a) of the General Statutes extends liability for past child support in a paternity action "to three years next preceding the date of the filing of [the paternity] petition," which in this case is May 15, 1995. The determination of past child support is governed by the child support guidelines. "The child support and arrearage guidelines . . . shall be considered in all determinations of child support amounts and payment on arrearages and past due support within the state," General Statutes § 46b-215b(a).
The plaintiff and the defendant at one point during the hearing agreed that the court should use the child support guidelines in existence during the particular time periods in question. Under this scenario, one set of child support guidelines would be used for the period from May 15, 1995 through July 31, 1999 and another set of child support guidelines for the period August 1, 1999 through the present.[9] I do not believe that the parties are correct in urging this court to use two different sets of guidelines when determining the amount of past child CT Page 7866 support due. Rather the court should use the child support guidelines that are in effect at the time the court determines the past support due.
The language of the existing child support and arrearage guidelines sustains this view. The current guidelines define "arrearage" as synonymous with "past-due support" and consisting of one or a combination of three elements: "(A) court ordered current support or arrearage payments which have become due and payable and remain unpaid; (B) unpaid child support award amounts which have been reduced to a judgment or otherwise found to be due by a court of competent jurisdiction, whether or not presently payable; and (C) support due for periods prior to an action to establish a child support order, provided such amounts are based upon the obligor's ability to pay during the prior periods if known or, if not known, on the obligor's current ability to pay if known or, if not known, upon assistance rendered to the obligor's child." Regs., Conn. State Agencies § 46b-215a-1(2)(A), (B) and (C). See also General Statutes § 46b-215(a)(7)(B) (which provides that the determination of support due prior to the action shall be based upon the obligor's ability to pay during such prior periods).
The current guidelines further provide that the total arrearage is to be determined by entering the total of each of the three elements of the arrearage. Regs., Conn. State Agencies § 46b-215a-4a(f)(1). The total arrearage specifically includes "the total of all support amounts due for periods prior to the initial determination of a support order, calculated as provided in subparagraph (2)(C) of section 46b-215a-1 of the Regulations of Connecticut State Agencies." Regs., Conn. State Agencies § 46b-215a-4a(f)(1)(C). The clear import of this provision is that the court should use the current support guidelines to calculate past due support provided the arrearage is based upon the obligor's ability to pay during the prior periods if known.
Before determining whether, as the defendant suggests, the application of the guidelines would be inequitable or inappropriate because of the existence of one of the deviation criteria, the court must first determine the amount of past due support indicated by the guideline schedule. Favrow v. Vargas, 231 Conn. 1, 25 (1994).
The amount of the past due support varies each year as a result of changes in the parties' net income. For the calendar year 1995, I find that the plaintiff had no income of her own. At that time, she resided with her husband, Lance Pagliaro, who was the sole source of income for the plaintiff and the child, Winston. I find that the defendant's income was as reflected in his 1995 federal income tax return. He had a gross annual income of $65,701 and a net annual income of $45,089.[10] These CT Page 7867 income figures result in a presumptive child support amount payable by the defendant of $192 weekly and past due support totaling $6,336 for the period May 15, 1995 through December 31, 1995.
For the calendar year 1996, I find that the plaintiff had no employment income of her own. The defendant based on his federal income tax return had a gross annual income of $158,973 which results in a net weekly income of $1,973. The presumptive child support amount pursuant to the guidelines is $324 weekly. The past due support from January 1, 1996 through December 31, 1996 is $16,848.
For the calendar year 1997, the plaintiff, based on her federal income tax return, had gross annual income of $7,962, resulting in a net weekly income of $141. The defendant, based on his federal income tax return, had gross annual income of $124,332, resulting in a net weekly income of $1,571. The presumptive child support amount pursuant to the guidelines is $273 weekly. The past due support from January 1, 1997 through December 31, 1997 is $14,196.
For the calendar year 1998, the plaintiff, based on her federal income tax return, had gross annual income of $9,638, resulting in a net weekly income of $159. The defendant, based on his federal income tax return, had gross annual income of $130,035, resulting in a net weekly income of $1,743. The presumptive child support amount pursuant to the guidelines is $290 weekly. The past due support from January 1, 1998 through December 31, 1998 is $15,080.
For the calendar year 1999, the plaintiff had actual gross income of $10,444 from employment as a website consultant. In addition, commencing in October 1999, she had the capacity to earn a net income of $705 weekly as a self-employed attorney. The combination of the two jobs during 1999 results in an average net weekly income for the year of $322. The defendant, based on his federal income tax return, had gross annual income of $139,706, resulting in a net weekly income of $1,759. The defendant also was supporting his child, Trevor Hayden Jones, who was born July 26, 1999. Pursuant to the guidelines, he was entitled to deduct an imputed support obligation for Trevor as a qualified child. The presumptive child support amount payable by the defendant to the plaintiff pursuant to the guidelines is $258 weekly. The past due support from January 1, 1999 through December 31, 1999 is $13,416.
For the calendar years 2000 and 2001, the plaintiff had an earning capacity as a self-employed attorney of $705 net weekly income. The defendant had a net weekly income of $1,620. The presumptive child support amount pursuant to the guidelines is $226 weekly. The past due support from January 1, 2000 through June 6, 2001 is $16,724. CT Page 7868
The defendant contends that the court should deviate from the presumptive child support amount for the period of time from May 15, 1995 through June 2, 1996 when the plaintiff and the child resided with Pagliaro and were financially supported by him. The defendant also claims that no child support is due for a substantial period of time after June 2, 1996, when the plaintiff physically separated from Pagliaro because Pagliaro was paying the mortgage on the marital home and the child's daycare expense.
The presumptive child support amounts prescribed by the guidelines may be rebutted by a specific finding on the record that such amounts would be inequitable or inappropriate in a particular case. Regs., Conn. State Agencies § 46b-215a-3(a). Only the deviation criteria contained in the guidelines establish sufficient bases for such a finding. §46b-215a-3(a). One of the deviation criteria contained in the guidelines addresses "other financial resources available to a parent." §46b-215a-3(b)(1). That deviation criteria provides that "In some cases, a parent may have financial resources that are not included in the definition of net income, but could be used by such parent for the benefit of the child or for meeting the needs of the parent. The following resources may justify a deviation from presumptive support amounts: . . . (D) the regularly recurring contributions or gifts of a spouse or domestic partner, but only if it is found that the parent has reduced his or her income or has experienced an extraordinary reduction of his or her living expenses as a direct result of such contributions or gifts."
From May 15, 1995 through June 2, 1996, the plaintiff and Winston resided with Lance Pagliaro, the plaintiff's spouse at the time. The plaintiff had no income of her own. All of her expenses and those of her child were paid for by Pagliaro. I find that she experienced during this time period an extraordinary reduction in her living expenses as a direct result of the regular financial contributions of Pagliaro. I also find that it would be inappropriate and inequitable to require the defendant to pay the presumptive past due child support for the time period when the plaintiff and Winston were completely supported by Pagliaro. Under the circumstances, it is appropriate that the amount of the deviation be based on Pagliaro's income at the time he was supporting the plaintiff and Winston.
Pagliaro's gross income was $108,597 in 1995 and $108,912 in 1996. These gross income figures result in net weekly incomes for Pagliaro of $1,479 and $1,474 respectively. The computation of child support attributing Pagliaro's income to the plaintiff yields a weekly child support figure payable by the defendant of $135 for the latter half of CT Page 7869 1995 and $219 for the first half of 1996. I find these weekly child support amounts to be appropriate and equitable under the circumstances for the period from May 15, 1995 through June 2, 1996. The past due support owed by the defendant for this period is therefore $9,273.
On June 2, 1996, the plaintiff and Pagliaro physically separated. Except for three weeks in June 1996 when Winston lived with the plaintiff and for two months in 1996 when he lived with Kelso, Winston primarily lived with Pagliaro until July 17, 1997. In addition, after Pagliaro separated from the plaintiff, he paid the monthly mortgage payment of approximately $1,300 per month on the marital home where the plaintiff continued to reside and he paid the child's daycare expenses.
The defendant contends that he should not be ordered to pay child support for those periods of time when Pagliaro had the child living with him. I am unable to determine whether a deviation from the presumptive child support amount is appropriate or equitable on such a basis without knowing the nature of the controlling court orders issued by the Texas court. At trial, the only Texas court orders, other than the final divorce decree, that were submitted as evidence were the court orders entitled "Additional Temporary Orders" which were entered by the Texas court on July 17, 1997. I was not provided with the Texas court orders that governed the period of time from the filing of the divorce in June 1996 through July 17, 1997. I do not know the extent of the rights and obligations, including those related to custody and support, given the various parties that were appointed conservators of Winston at various times during the proceedings. See e.g. Texas Statutes § 153.134 (which provides for the designation of rights by the court amongst joint conservators) and § 153.371 (which specifies the rights of a nonparent appointed as sole managing conservator "unless limited by court order.") I also do not know whether possessory conservators were appointed or the extent of their rights as specified by the court. See Texas Statutes § 153.006.
The defendant also claims that the court should deviate from the presumptive child support amount for that period of time when Pagliaro paid the mortgage on the plaintiff's residence and Winston's day care expenses. I do not find that the payment of the monthly daycare expense by Pagliaro to have caused a reduction in the plaintiff's income or an extraordinary reduction of her living expenses as a direct result of such contributions. Regs., Conn. State Agencies § 46b-215a-3(b)(1)(D). The payment of the monthly mortgage however is a substantially different matter.
From June 2, 1996 until February 2000, Pagliaro paid the monthly mortgage of $1,300 on the marital home where the plaintiff resided. Given CT Page 7870 the plaintiff's very limited income during this time period and the substantial amount of the mortgage payment, I find that the plaintiff experienced during this time period an extraordinary reduction in her living expenses as a direct result of the regular financial contributions of Pagliaro. Regs., Conn. State Agencies § 46b-215a-3(b)(1)(D). I also find that it would be inappropriate and inequitable to require the defendant to pay the presumptive past due child support for the time period when Pagliaro paid the mortgage for the plaintiff's residence. Under the circumstances, it is appropriate that the amount of the deviation be based on the amount of Pagliaro's contribution.
The computation of child support attributing additional monthly income of $1,300 to the plaintiff for the period June 1996 to February 2000 yields the following weekly child support figures payable by the defendant: $316 for the latter half of 1996; $256 for 1997; $277 for 1998; $245 for 1999. The presumptive weekly child support amount of $226 for 2000 does not change as a result of including the January 2000 mortgage payment of $1,300 in the plaintiff's income. I find these adjusted weekly child support amounts to be appropriate and equitable under the circumstances for the period from June 2, 1996 through December 31, 1999.
In light of the above, the defendant owes past due child support in the following amounts: (1) $9,273 for the period from May 15, 1995 until June 2, 1996; (2) $9,480 for the period June 2, 1996 through December 31, 1996;[11] (3) $13,312 for the period from January 1, 1997 through December 31, 1997; (4) $14,404 for the period from January 1, 1998 through December 31, 1998; (5) $12,740 for the period from January 1, 1999 through December 31, 1999; (6) $16,724 for the period from January 1, 2000 through June 6, 2001. The total past due support owed by the defendant is $75,933.
Finally, the plaintiff asks that the court award her attorney's fees in the amount of $27,439 for the prosecution of the paternity action. The defendant does not contest the reasonableness of the amount of the fee requested. He does challenge the appropriateness of awarding any fee in this case. The defendant argues that an award of attorney's fees is discretionary with the court and that no such fees should be awarded in this case. He claims that the plaintiff could have avoided incurring attorney's fees by seeking child support enforcement services pursuant to Title IV-D of the Social Security Act and using the services of the Attorney General for the State of Connecticut.
Pursuant to General Statutes § 46b-171(a)(1), the court has the authority to award a reasonable attorney's fee to a successful plaintiff in a paternity action. The court has broad discretion in determining when CT Page 7871 an award of attorney's fees will be made. Miller v. Kirshner,225 Conn. 185, 210-11 (1993). An award of fees is appropriate in this case. The issues of paternity and child support were vigorously contested over a period of three years. The plaintiff lacks the financial wherewithal to pay her own attorney's fees while the defendant possesses substantial income and assets.
The fact that the plaintiff could have used child support enforcement services pursuant to Title IV-D of the Social Security Act is not a bar to an award of attorney's fees. The plaintiff had the right, not the obligation, to utilize such services. She also would not have been represented by the Attorney General, who represents the IV-D agency in non-TANF IV-D proceedings. General Statutes § 46b-231(t).
I have reviewed the affidavits submitted by the plaintiff in support of her attorney's fees request. Relying on my knowledge of the court proceedings and my review of the court file and considering the complexity of the issues presented as well as the skill of counsel, I find that attorney's fees in the amount of $20,000 is reasonable. Miller v.Kirshner, supra, 225 Conn. 201.
The court hereby enters the following orders:
1. The defendant is ordered to pay current child support in the amount of $226 weekly.
2. The defendant is ordered to pay $45 weekly[12] as payment toward his child support arrearage of $75,933. The defendant is further ordered to pay the plaintiff within 30 days of the date of this decision a lump sum of $20,000 toward payment of his arrearage.
3. The defendant is ordered to maintain medical and dental coverage for the minor child to the extent it is available at reasonable cost through his employer if and when Lance Pagliaro is no longer obligated to provide health insurance for the minor child.
4. In accordance with the child support guidelines, the plaintiff shall be responsible for 44% and the defendant shall be responsible for 56% of any unreimbused medical expenses that exceed one hundred dollars per calendar year and any qualified child care costs.
5. The defendant is ordered to pay the plaintiff reasonable attorney's fees in the amount of $20,000. A lump sum payment of $10,000 shall be paid to the plaintiff through her attorney as trustee within 60 days of the date of this decision. The remainder shall be paid thereafter at the rate of $500 per month. CT Page 7872
BY THE COURT
Judge Jon M. Alander