N. DENIS CROWTHER *v.* GERBER
GARMENT TECHNOLOGY, INC.
(4179)

DUPONT, C. J., BORDEN and BIELUCH, Js.

Argued March 18—decision released July 29, 1986

*Albert Zakarian,* with whom, on the brief, was *James Sicilian,* for the appellant-appellee (defendant).

*William H. Narwold,* for the appellee-appellant (plaintiff).

BIELUCH, J. This action arises out of the plaintiff's claim for sales commissions due from the defendant, his former employer. The defendant has appealed from the modified judgment of the trial court in favor of the plaintiff in the amount of $214,619.52. The plaintiff has also filed a cross appeal from the judgment. We find no error.

The trial court found the following facts. The plaintiff is the former national sales manager of the defendant corporation. He was hired by the defendant through its vice president for marketing, Peter Lanzer, on September 9, 1980, as national sales manager for the defendant's computerized marker-making machine known as the AM1 system which consisted of a computer, plotter, printer, disc, screen and software. That system uses a computer to lay out patterns for use in the apparel, automobile and aerospace industries. In the spring of 1981, the AM1 system was modified and was then redesignated AM5. The marker-making system is used in conjunction with a cutting machine known as the Gerber Cutter.

The plaintiff had previously been employed by Hughes Aircraft as a regional sales manager for the AM1 marker-maker before its purchase by the defendant. When the plaintiff was hired as the defendant's national sales manager to work out of Atlanta, Georgia, the written contract of employment provided for an annual salary of $50,000 and a commission of 1 per-

cent on "systems and upgrades." The agreement also gave him a $20,000 annual draw against his future commissions as well as the use of a company car. The defendant took over a "bridging loan," then held by his former employer in the amount of $16,000, on the plaintiff's home in Wilmington. Finally, the plaintiff was to receive a commission of one-eighth of one percent on all service contracts for the systems and upgrades. Both parties agreed to give two months notice of termination of the employment.

From September, 1980, through April 30, 1981, this agreement remained in effect. The plaintiff served as the defendant's national sales manager while living in Atlanta. However, the parties came to realize that the plaintiff would be better able to discharge his responsibilities if he lived closer to the defendant's home office in South Windsor, Connecticut. The plaintiff and Lanzer, therefore, agreed that the plaintiff would move to Connecticut. The plaintiff, however, expressed concern about the cost of housing and the high rate of interest in selling his Atlanta home and in purchasing a replacement home which he had found in Glastonbury. As a result, as of May 1, 1981, the plaintiff's compensation agreement with the defendant was modified to increase his commission on service contracts from one-eighth to one-quarter percent. Further, to defray moving and housing expenses, the plaintiff was to receive an override of 1 percent commission on the first $2,000,000 of AM1 systems and upgrade sales, or $20,000, in the first year, and a similar override of 1 percent on sales of $1,000,000, or $10,000, annually thereafter. The plaintiff's annual draw against anticipated commissions was also increased to $40,000.

At approximately the same time as this new compensation agreement was being negotiated, the plaintiff was discussing with Lanzer his employment as national sales manager for an additional machine made by the

defendant, the Gerber Cutter, also referred to as the System 91. The cutter is an automated pattern cutting device designed to be used in conjunction with a computer-aided design system, such as the AM1 or AM5. This expansion of the plaintiff's duties to cover another product was finalized in the late spring of 1981, and Lanzer and the plaintiff worked throughout June of that year reorganizing the cutter sales program in preparation for a sales meeting to be held on July 10. Projections by the plaintiff for sales of the cutter in the period between July 1, 1981, and April 30, 1982, were $12,000,000 to $14,000,000. AM system sales were expected to be between $8,000,000 and $10,000,000.

After the sales meeting, Lanzer met with the plaintiff to discuss the success of the meeting. Lanzer then told the plaintiff: "Of course, Denis, that leaves only your compensation to be agreed." The plaintiff laughingly responded: "Don't worry, Peter, all you have to do is continue my one percent." Lanzer responded: "Don't be crazy, Denis. This would mean you would receive more money than Joe Gerber, Stan Leven or Bob Maerz [of management]." With that discussion, the matter then ended.

During the summer of 1981, Robert Maerz, who was a senior vice-president of marketing and operations for the defendant's parent company, and a director of the defendant, saw figures on a computer printout which suggested that the plaintiff's salary was a guaranteed $90,000. He called Lanzer to discuss the situation because that salary was significantly out of line with other compensation at the company. Lanzer, Maerz and H. Joseph Gerber, the chairman of the board of directors, met to discuss the situation. Lanzer explained to Maerz that the computer printout was incorrect. Maerz then directed Lanzer to establish a graduated scale providing for increased commissions based on increased sales.

The defendant's fiscal year runs from May 1 through April 30. From July 1, 1981, through April 30, 1982, the defendant's accounting office accrued, as a potential expense in contemplation of commissions to be paid, 1 percent on sales of AM systems and Gerber Cutters. This accrual was directed by Lewis Caron, vice president and comptroller of the defendant. In the summer of 1981, Caron also specifically instructed his subordinates not to pay commissions to the plaintiff because no new agreement had been reached.

Caron pressed Lanzer to formalize a compensation agreement with the plaintiff as the end of the 1981-82 fiscal year neared. On May 5, 1982, Lanzer met with the plaintiff and informed him that although the plaintiff claimed a commission of 1 percent on all sales, the defendant would pay no more than one-quarter percent. The plaintiff responded: "Well, if that is so, then it will have to be so." The trial court found that the plaintiff accepted this modification of the commission rate as a resolution of the question for the future only. The defendant subsequently gave the plaintiff a check for $38,596.02. This sum was a net adjusted figure which included a commission payment of $37,471.49, computed at one-quarter percent of all sales of AM systems and upgrades and Gerber Cutters during the period of July 1, 1981, through April 30, 1982. This payment reflected sales of AM systems in the amount of $5,911,352, and cutter sales of $9,077,256.

The sole dispute between the parties at trial related to their disagreement as to the amount of commissions to which the plaintiff was entitled during the ten-month period from July 1, 1981 through April 30, 1982. The parties agree that the plaintiff has been properly paid from September, 1980, through June 30, 1981, and from May 1, 1982, until the time of his resignation in October, 1982. The amount disputed by the parties is the difference between the plaintiff's demand of 1 per-

cent on the AM systems and cutter sales and what the defendant paid him at one-quarter percent.

The trial court concluded that the parties' original compensation agreement, as modified by them prior to July 1, 1981, for sales of AM systems and upgrades was never terminated in accordance with its provision for two months cancellation notice. Therefore, the plaintiff was entitled to receive a commission of 1 percent on all sales of AM systems and upgrades during the ten-month period in question. By that computation he was entitled to receive the amount of $59,113.52, representing 1 percent of total sales of $5,911,352. The court also ruled that since the Gerber Cutter was not an upgrade of the AM systems, it was not covered by the parties' original contract. For that reason, the court found that there was no meeting of the minds regarding the plaintiff's compensation for cutter sales until May 5, 1982, at which time the one-quarter percent commission rate for all products was agreed upon as a further amendment to the employment contract. The court, therefore, found that the plaintiff was entitled to a commission of one-quarter percent on cutter sales of $9,077,256, amounting to $22,693.14. The total due to the plaintiff from the defendant was found to be $81,806.66. Since he was previously paid $37,471.49 on or about May 5, 1982, the balance due him was $44,335.17.

Upon this amount due, the trial court awarded the plaintiff statutory interest of $12,030.01. Pursuant to General Statutes § 31-72,[1] the plaintiff sought, and the

---

[1] General Statutes § 31-72 provides in pertinent part: "When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive . . . such employee . . . may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court . . . ."

General Statutes § 31-71a (3) contains the following definition: " 'Wages' means compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation."

court awarded, double damages in the sum of an additional $44,335.17. Further, under § 31-72, the court allowed reasonable attorney's fees and expenses through trial of $32,997.37 and post-trial to judgment of $30,957. Total judgment was rendered for the plaintiff to recover of the defendant $164,654.72 plus costs. From this judgment, the defendant appealed and the plaintiff cross appealed.

Subsequent to the rendition of judgment and filing of the defendant's appeal, the plaintiff moved, pursuant to General Statutes § 52-212a and Practice Book § 326 allowing such motion within four months of judgment, to open and modify the judgment to include an additional 12 percent interest, compounded annually, on the amount previously awarded for the period from the filing of the complaint on October 19, 1982, to the judgment of April 30, 1985, under the provisions of General Statutes § 52-192a.[2] The plaintiff had filed an "offer of judgment" for $150,000 on April 27, 1983.

---

[2] "[General Statutes] Sec. 52-192a. OFFER OF JUDGMENT BY PLAINTIFF. ACCEPTANCE BY DEFENDANT. COMPUTATIÓN OF INTEREST. (a) After commencement of any civil action based upon contract or for the recovery of money only, the plaintiff may before trial file with the clerk of the court a written 'offer of judgment' signed by him or his attorney, directed to the defendant or his attorney, offering to settle the claim underlying the action and to stipulate to a judgment for a sum certain. The plaintiff shall give notice of the offer of settlement to the defendant's attorney, or if the defendant is not represented by an attorney, to the defendant himself. Within thirty days after being notified of the filing of the 'offer of judgment,' the defendant or his attorney may file with the clerk of the court a written 'acceptance of offer of judgment' agreeing to a stipulation for judgment as contained in plaintiff's 'offer of judgment.' Upon such filing, the clerk shall enter judgment immediately on the stipulation. If the 'offer of judgment' is not accepted within thirty days, the 'offer of judgment' shall be considered rejected and not subject to acceptance unless refiled. Any such 'offer of judgment' and any 'acceptance of offer of judgment' shall be included by the clerk in the record of the case.

"(b) After trial the court shall examine the record to determine whether the plaintiff made an 'offer of judgment' which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in his 'offer

The defendant opposed the additional award of interest under the "offer of judgment" statute on the ground that counsel fees and expenses, awarded in the amount of $63,954.37, should not be added to the award of double wages and interest, totaling $100,700.35, for the purpose of the statutory comparison of judgment against offer of settlement. It also claimed that the award of interest on the attorney's fees would result in an allowance of such fees in excess of the $350 limit set by the statute for such awards to plaintiffs. The court opened and modified its prior judgment by adding to its amount simple interest of 12 percent per annum from the filing of the complaint in the sum of $49,964.80, making the total judgment amount $214,619.52. In answer to the defendant's objections, the trial court referred to § 31-72, which expressly allows the recovery of "reasonable attorney's fees" in addition to double wages for the failure to pay an employee wages earned. The defendant thereafter amended its statement of issues on appeal to include questions raised by the modification of the court's judgment.

The defendant's first claim is that the court erred in finding that the plaintiff was entitled to a commission of 1 percent on sales of the AM systems and upgrades during the ten month period in issue. Conversely, the plaintiff's first claim on his cross appeal

of judgment,' the court shall add to the amount so recovered twelve per cent annual interest on said amount, computed from the date such offer was filed in actions commenced before October 1, 1981. In those actions commenced on or after October 1, 1981, the interest shall be computed from the date the complaint in the civil action was filed with the court if the 'offer of judgment' was filed not later than eighteen months from the filing of such complaint. If such offer was filed later than eighteen months from the date of filing of the complaint, the interest shall be computed from the date the 'offer of judgment' was filed. The court may award reasonable attorney's fees in an amount not to exceed three hundred fifty dollars, and shall render judgment accordingly. This section shall not be interpreted to abrogate the contractual rights of any party concerning the recovery of attorney's fees in accordance with the provisions of any written contract between the parties to the action."

is that the court erred in failing to find that a commission of 1 percent was due on sales of the Gerber Cutter. We find no merit to either claim.

Each of these claims constitutes a patent attempt to retry the facts of this case. Absent a statutory warranty or specific contract language, the scope of contractual terms is a factual question subject to a limited scope of appellate review. *Harry Skolnick & Sons* v. *Heyman,* 7 Conn. App. 175, 178, 508 A.2d 64 (1986). There was sufficient evidence for the court to conclude that the parties' original contract relating to AM systems and upgrades remained in effect throughout the time period in issue before the court and that it was not modified, to comport with the defendant's claimed one-quarter percent commission rate, until May 5, 1982. Specifically, the trial court was justified in its reliance on the fact that the defendant had accrued an expense of one percent commission on the sale of the AM systems for the ten-month period in question. The conduct of the parties regarding the terms of a contract is a useful and proper aid to its interpretation. *Lar-Rob Bus Corporation* v. *Fairfield,* 170 Conn. 397, 407–408, 365 A.2d 1086 (1976).

With respect to the plaintiff's claim on his cross appeal, there was also enough evidence to support the court's conclusion that the parties' original contract did not extend to sales of the Gerber Cutter. The written contract of September 9, 1980, between the parties provided in relevant part as follows: "Your responsibilities will include the orderly marketing of AM-1 Systems and assisting in GERBER cutter sales, as and when required. Your duties will include the building of an aggressive sales force to cover the U.S.A., Canada and Mexico (North American Continent). Your salary for these duties will be at the rate of $50,000 per annum, payable weekly; and you will receive a *Commission of 1% of systems and upgrades.*" (Emphasis added.) The

trial court was justified in reading the emphasized language, contrary to the interpretation urged by the plaintiff, to refer only to the "AM-1 Systems" mentioned in the contract and to upgrades of that system such as the modification redesignated AM5, and not to sales of the cutter, which is not described in the agreement as a "system," and is a separate item designated within the scope of additional responsibilities.

Similarly, the second claim of error of the defendant is an effort to change the legal conclusions which logically arise from the trial court's findings of fact by distorting the clear meaning of the findings. The defendant asserts that because the plaintiff was informed after the July 10, 1981 sales meeting, that an extension of his 1 percent commission to the sale of cutters additional to the same commission for sales of AM systems would be excessive, he was on notice that the rate of 1 percent in his original contract had changed with respect to sales of the AM systems. That is a possible interpretation of the conversation between the plaintiff and Lanzer, but it is clearly not the reading of the trial court. The trial court was well within the reasonable bounds of its judicial discretion in concluding that the only notice then given to the plaintiff was that he could not expect to receive a commission of 1 percent on the cutters sold. The defendant, in this claim of error, simply fails to acknowledge the court's separation of the parties' agreement with respect to the AM systems and the Gerber Cutters.

The next two claims raised by the defendant are that the court erred in awarding double damages and reasonable attorney's fees pursuant to General Statutes § 31-72. That statute provides for a discretionary award of double damages, with costs and reasonable attorney's fees, to employees who are successful in actions against their employers for wages due. The defendant claims: (1) that the statute is unconstitutional because

it contains no criteria by which to determine whether such awards should be made; and (2) that even if the statute is not unconstitutional, the facts of this case do not support an award of double damages and counsel fees. We disagree.

First, we decline to consider the constitutionality of § 31-72. That issue was not raised in the trial court. We see no reason to part from our strong policy of not considering issues on appeal which were not raised at trial. *Heiskell* v. *Heiskell,* 6 Conn. App. 471, 506 A.2d 151 (1986).

With regard to the defendant's second argument, the memorandum of decision clearly indicates that the basis for the award of double damages and attorney's fees in this case was, to a great degree, the fact that the defendant had breached its employment contract with the plaintiff. The defendant acknowledges that the appropriate use of the court's power to award double damages and counsel fees is where a finding of bad faith, arbitrariness or unreasonableness has been made, but argues that a mere finding that the defendant breached its employment contract is not sufficient. We conclude, however, that the court's additional findings in this case do support the awards when read in conjunction with its express finding that the defendant breached the parties' contract of employment. The court found that the defendant's "position that it had *unfettered discretion* to adjust retroactively [the plaintiff's] commission rate is untenable." (Emphasis added.) The court further concluded that the defendant's "conduct plainly demonstrates that [it] understood that the employment agreement was in effect during [the plaintiff's] entire employment." Additionally, the court noted that the defendant "concedes that for the ten-month period prior to May 1, 1982 it never reached an agreement with [the plaintiff] to modify the 1% rate and because of that decided to change the rate unilater-

ally with a retroactive adjustment to [the plaintiff's] earned commission recorded in the company books." These findings show that the defendant, jaundiced by the financial success of the plaintiff under the existing employment contract, unilaterally undertook to reduce the commission rate, in effect taking the law into its own hands. Such disloyalty to its employment contract with the plaintiff was sufficiently unreasonable as to warrant an award of double damages and attorney's fees in this case.

The defendant also asserts that the court erred in awarding the plaintiff interest in addition to double damages. We disagree. The trial court awarded the plaintiff statutory interest on his actual lost wages of $44,335.17. At the statutory rates effective between May 1, 1982, and judgment on April 30, 1983, a period of three years, the court calculated the simple interest to total $12,031.01, and awarded this amount. The court then allowed the plaintiff an additional $44,335.17 as double damages pursuant to § 31-72. The court expressly refused to grant interest on the double damages since the enabling statute contains no provision for interest. In proper fashion the court basically compensated the plaintiff for his overdue commissions and, by awarding him statutory interest on this amount, compensated him for the delay in payment of his overdue wages. The additional award of double damages pursuant to § 31-72 was a punitive award; see remarks of Senator Nancy Johnson, Conn. Joint Standing Committee Hearings, Labor and Industrial Relations, Pt. 1, 1978 Sess., p. 154; and was appropriately granted in addition to the statutory interest allowed on the plaintiff's basic recovery of his unpaid commissions.

Finally, the defendant claims that the court erred in awarding to the plaintiff by modification of judgment additional interest of $49,964.80 pursuant to General

Statutes § 52-192a (b).[3] This award, also punitive in nature and authorized by legislation enacted to promote fair and reasonable compromise of litigation without trial, was predicated on the recovery of damages by the plaintiff in excess of his offer of judgment in the amount of $150,000 filed on April 27, 1983. This, the defendant claims, was error because the amount recovered by the plaintiff exceeded $150,000 only after the court's award of reasonable attorney's fees of $63,954.37 was added into the calculation, to make the total amount recovered by judgment $164,654.72.

The defendant argues that since attorney's fees are not paid to the plaintiff, but to counsel, they should not be included in the comparison or measurement of recovery by the plaintiff against his offer of judgment for the purpose of § 52-192a. The defendant maintains that under the provisions of § 52-192a(b) "[t]he court may award reasonable attorney's fees in an amount not to exceed three hundred fifty dollars [only]. . . . " Furthermore, the defendant claims, since the attorney's fees did not accrue until the time of the judgment, "an award of interest on such fees relating back to the date of the Complaint is outrageous" for the reason that by this punitive award the plaintiff will be receiving 12 percent interest, or $7674.52 per annum, on attorney's fees before they are earned. Also, the defendant claims, such a result would be unjust and far in excess of the defendant's right to counsel fees not in excess of $350 allowed the defendant under General Statutes § 52-195 in the converse situation where a defendant's offer of judgment is not exceeded by the the plaintiff's recovery. See *Verrastro* v. *Sivertsen,* 188 Conn. 213, 219, 448 A.2d 1344 (1982). We disagree with the defendant's contentions.

---

[3] See footnote 2, supra.

First, it is now clear that an award of statutory attorney's fees awarded by judgment may be taken into account in calculating the amount of recovery to be measured against the amount of the plaintiff's pretrial offer of judgment. In *Gionfriddo* v. *Avis Rent A Car System, Inc.,* 192 Conn. 280, 472 A.2d 306 (1984) (*Gionfriddo I*), the court upheld an award of treble damages in favor of the plaintiff under General Statutes § 14-295 in addition to an award of compensatory and exemplary damages. "Exemplary" and "punitive" damages are merely "alternate labels for the same remedy." *Alaimo* v. *Royer,* 188 Conn. 36, 42, 448 A.2d 207 (1982). "Punitive damages consist of a reasonable expense properly incurred in the litigation . . . less taxable costs." (Citation omitted.) *Markey* v. *Santangelo,* 195 Conn. 76, 80, 485 A.2d 1305 (1985). Such costs of litigation can include attorney's fees, even if contingent upon the successful outcome of the case. Id. See also *Alaimo* v. *Royer,* supra. The jury in *Gionfriddo I* awarded the plaintiff compensatory damages of $353,262 on the first count and exemplary damages of $124,977, representing costs of litigation including counsel fees, less taxable costs, on the second count. The third count, seeking treble damages under § 14-295, was then tried to the court, which found for the plaintiff and trebled the damages awarded by the jury on the first count by adding to the verdict an amount equal to twice the compensatory jury award, or $706,524.

*Gionfriddo* v. *Avis Rent A Car System, Inc.,* 192 Conn. 301, 472 A.2d 316 (1984) (*Gionfriddo II*), ancillary to *Gionfriddo I,* concerned the availability of statutory interest under § 52-192a (b) where the plaintiff's offer of judgment in the amount of $750,000 had been rejected and he subsequently recovered compensatory and exemplary damages of $478,239 by jury verdicts on counts one and two, and an additional $706,524 as

a result of treble damages awarded by the trial court on the third count. Although the recovery totaled $1,184,763, the trial court disallowed interest under § 52-192a (b) because the basic jury verdict without the court's enhancement by treble damages was less than $750,000.[4]

The Supreme Court found otherwise, stating: "[The defendants] urge us to hold that, because treble damages are not compensatory, the parties could not agree to their payment and therefore such damages must be excluded from the comparison contemplated by an offer of judgment. In effect, the defendants invite us to create an implied exception to § 52-192a for cases in which a plaintiff's recovery has been enhanced by statutorily trebled damages. . . . The plaintiff's offer of judgment must offer to settle the case on all counts, including his count for multiple damages. Before the commencement of trial, the plaintiff cannot be sure of damages from either the jury or the court. The policy of encouraging settlements counsels against piecemeal offers of judgment. We therefore conclude that the trial court was in error in holding that the plaintiff was not entitled to recover interest under § 52-192a." *Gionfriddo II,* supra, 307.

The court's holding in *Gionfriddo II,* that since the plaintiff's offer of judgment under § 52-192a (b) must seek to settle the action on all counts it must be compared with the amounts recovered on all counts, is decisive of the issue now under consideration. Where a claim for the extraordinary statutory remedy of double wages, costs and reasonable attorney's fees allowed under § 31-72 has been alleged in the complaint,[5] any

---

[4] The inclusion of punitive damages of $124,977 awarded on the second count in the comparison of amounts was not questioned by the defendants at trial or on appeal.

[5] No such remedy is available where the complaint has not expressly invoked the relevant statute. *Alaimo* v. *Royer,* 188 Conn. 36, 43, 448 A.2d 207 (1982).

relief awarded under such a claim after trial must be included in the amount of recovery for the purpose of measurement against an offer of judgment made under § 52-192a (b). The two counts of the plaintiff's supplemental amended complaint sought recovery of unpaid wages under "Section 31-71a *et seq.* of the Connecticut General Statutes." In his prayer for relief, he claimed: "1. Money damages; 2. Double damages pursuant to Section 31-72 of the Connecticut General Statutes; 3. Attorneys' fees pursuant to Section 31-72 of the Connecticut General Statutes; 4. Interest; [and] 5. Any other relief deemed just and equitable by this Court." These were the claims which the defendant litigated at trial when it refused the plaintiff's offer of judgment "to settle the instant claim and to stipulate to a judgment for the sum of $150,000.00." The defendant gambled and lost on the provisions of § 52-192a (b) when the plaintiff recovered basic damages on his complaint in the total sum of $164,654.72 under his various claims for relief. Since the court, subsequent to the defendant's rejection of the offer of judgment, awarded the plaintiff, after trial of the issues, damages in excess of the settlement offer, pursuant to the provisions of § 52-192a (b), the plaintiff was properly awarded annual interest of 12 percent on the judgment from the filing of the complaint, the offer of judgment having been filed within eighteen months of the complaint.

The defendant's further argument against the inclusion of attorney's fees awarded under § 31-72 in the amount of recovery to determine applicability of the penalty under § 52-192a (b) is illogical. It contends that "plaintiff should be entitled to the same award of attorney's fees as defendant if he is successful with his offer of judgment." Under General Statutes § 52-195 (b), the plaintiff, in that reverse event, "shall pay the defendant's costs accruing after he received notice. Such costs may include reasonable attorney's fees in an amount

not to exceed three hundred fifty dollars." Therefore, the defendant argues, the plaintiff should not be allowed to consider the reasonable attorney's fees of $63,954.37 as part of the recovery to be compared with the offer of judgment. The plaintiff's attorney's fees were recovered, however, as part of his claim for damages under § 31-72, and not as reasonable attorney's fees under § 52-192a (b). Indeed, § 52-192a (b), the defendant agrees, provides for attorney's fees as a matter separate and apart from the damages the plaintiff recovers, since by its terms "[t]he court may award reasonable attorney's fees in an amount not to exceed three hundred fifty dollars, and shall render judgment accordingly." No allowance for such additional counsel fees, however, has been made here, but its availability disproves the defendant's claim of unequal treatment to a defendant who might prevail under § 52-195. In brief, the two parallel provisions in §§ 52-192a (b) and 52-195 for limited counsel fees are not material to the question of the inclusion of statutory attorney's fees recovered under § 31-72 in the comparison of judgment and pretrial offer of settlement pursuant to § 52-192a (b).

The sole matter remaining for our consideration is the plaintiff's second claim of error on his cross appeal. The plaintiff claims that § 31-72 not only permits the court to award attorney's fees and costs to the time of judgment, as it did in this case, but also that it permits an award of reasonable attorney's fees and costs incurred in defending this appeal and prosecuting his cross appeal. Therefore, the plaintiff has requested that "[t]his action . . . be remanded to the trial court for consideration of plaintiff's reasonable attorneys' fees and costs incurred since the entry of judgment on April 30, 1985."

General Statutes § 31-72 permits an employee to recover "such reasonable attorney's fees as may be

allowed by the court" in a "civil action" for the collection of wages due. We have, in the past, construed such language to extend to attorney's fees incurred at the appellate level as well as at trial because of the statute's use of the term "action" rather than "trial." *Conservation Commission* v. *Price,* 5 Conn. App. 70, 74, 496 A.2d 982 (1982). Thus, we conclude that in the present case an award of attorney's fees incurred in defending the present appeal is available to the plaintiff in the discretion of the trial court under § 31-72.

We note, however, that this matter is in a procedurally different context from that which was present in *Price.* There we were faced with a direct appeal from the trial court's award of appellate fees incurred by the plaintiff in defending a prior appeal to the Supreme Court. In the present case, we have no decision of the trial court regarding attorney's fees incurred on appeal before us upon which to pass appellate judgment. Indeed, in *Price,* we expressly stated that the most appropriate time to pursue an award of appellate attorney's fees is after the appeal has been concluded. Id., 73. This is critical since, unlike the statute at issue in *Price* which mandated an award of attorney's fees; see General Statutes § 22a-44 (b); General Statutes § 31-72, involved in the present case, merely permits an award of reasonable attorney's fees in the discretion of the court. Thus, we must leave the plaintiff to pursue, in available proceedings in the trial court, his recovery of reasonable attorney's fees incurred in defending the defendant's appeal to this court.

There is no error on the appeal; there is no error on the cross appeal.

In this opinion the other judges concurred.