[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff Gregory Radding brought this action seeking to recover amounts he claims he is entitled to under the bonus program of Freedom Choice Mortgage, LLC (Freedom Choice). The plaintiff originally claimed these amounts from Freedom Choice and Frank Noe, principle owner, individually but at the commencement of the trial withdrew all counts against Frank Noe, individually. He proceeded to trial on three counts: breach of contract for refusal to pay him his production bonus and profit sharing; wrongful termination of employment; and a claim for double damages and attorney fees under C.G.S. § 31-72 for an alleged violation of C.G.S. § 31-76k (failure to pay accrued fringe benefits after termination of employment). The parties stipulated to the amounts the plaintiff would be entitled to if it is determined that he was eligible for the bonus program at the time his relationship with the company ended. These amounts were: $6,425.64 for 1996 production bonus, $955 for 1996 profit sharing, $394.39 for 1997 profit sharing and $623.98 for 1998 profit sharing.
The parties have entered into the following stipulation of fact:
1. Gregory Radding was hired as a commissioned loan representative by Freedom Choice Mortgage, LLC in August of 1995.
2. Freedom Choice Mortgage, LLC (hereinafter "Freedom") is a limited liability company organized pursuant to the laws of the State of Connecticut. Its date of organization was September 26, 1994.
3. Freedom was organized to permit two (2) kinds of membership interests: one, called member interests, for profit and loss purposes (and shown in Schedule A attached to the Operating Agreement); and two, called equity interests, for capital ownership purposes (shown in Schedule B attached to the Operating Agreement).
4. Upon its organization in 1994, both the member interests and equity interests were held as follows: 99.9% by Frank Noe; .1% by his wife, Lois Noe.
5. In December of 1995 Mr. Noe, with advice and assistance from his accountants and attorney, established a production bonus and profit sharing program for certain of its commissioned loan representatives.
6. On or about December 28, 1995, Gregory Radding and Frank Noe, on behalf of Freedom, executed a written Commissioned Loan Representative Agreement. At or prior to this time, Mr. Radding was provided with information on the production bonus and profit sharing program, including a copy of Freedom's Operating Agreement, together with an amendment dealing with said production bonus and profit sharing program. Also CT Page 7124 executed at this time (specifically in Mr. Radding's case on December 22, 1995) was a Workers Compensation Coverage Selection form.
7. On or about December 11, 1996, Gregory Radding was no longer employed as a commissioned loan representative by Freedom.
8. In the event the Court finds that Mr. Radding has established his entitlement to a production bonus and profit sharing, the parties stipulate that for the years in question, the properly calculated amounts for bonus and profit sharing would be as follows:
 1996 Production Bonus: $6,425.64 1996 Profit Sharing: 955.00 1997 Profit Sharing: 394.39 1998 Profit Sharing: 623.98 __________ $8,409.01
Additional facts are as follows. The defendant, Freedom Choice is in the business of providing mortgages for residential properties. The plaintiff, Gregory Radding ("Radding"), began working for Freedom Choice as a loan representative. His work consisted of fielding calls from persons interested in obtaining a mortgage either to purchase a residence or to re-finance an existing mortgage and obtaining mortgage commitments for such persons. Radding was compensated on a commission basis, receiving a percentage of the fees generated in favor of Freedom Choice, for providing this service upon the closing of individual loans.
When Radding started working for Freedom Choice the terms and conditions of his employment were oral. In December, 1995, the principal owner of Freedom Choice, Frank Noe ("Noe"), delivered to Radding and other loan representatives of Freedom Choice, a Commissioned Loan Representative Agreement; a workers compensation form; a copy of Freedom Choice's Operating Agreement signed September 26, 1994; and a copy of the First Amendment to the Operating Agreement of Freedom Choice Mortgage, LLC dated December 12, 1995. Radding signed the workers compensation waiver form on December 22, 1995, and signed the Commissioned Loan Agreement on December 28, 1995.
The amendment of its operating agreement by Freedom Choice made Radding and several other loan representatives non-equity members of Freedom Choice with certain rights to production bonuses and profit sharing. Radding continued in his capacity as a loan representative until December 13, 1996, when he terminated following a heated telephone exchange with Noe over servicing an account. CT Page 7125
At issue is whether Radding is entitled to profit splitting and bonuses. Section 7.2 of the original Operating Agreement states: "No person who becomes a member after the date of this Agreement, shall receive or be entitled to receive any distribution of profits until such person has been a member for one (1) full year from the date such person becomes a member . . ."
The parties disagree with respect to when Radding became a member of Freedom Choice, whether he remains a member to this date, and if not, the date when he was first no longer a member. Radding maintains that he became a member of the LLC on December 12, 1995. The defendant maintains that Radding did not become a member until December 28, 1995, the date on which he signed the Commissioned Loan Representative Agreement. The defendant claims that the package of documents given to Radding in mid December 1995, constituted an offer to make him a member of the LLC and that it was the defendant's intention that Radding could not become a member until he accepted the offer by executing the Commissioned Loan Representative Agreement. The plaintiff maintains that there was no offer of membership in the LLC and that neither the documents nor the actions of the defendant evidence an intention that membership in the LLC be conditioned upon the execution of the Commissioned Loan Representative Agreement.
The court looks to the language of the documents themselves. The First Amendment to the Operating Agreement, dated December 12, 1995, amended Section 7.6 of the original agreement. The amendment states: "Section 7.6 is hereby amended as follows:" The amendment does not state that the Operating Agreement will be amended in the future. It does not provide for any contingency which must first be met prior to the amendment taking effect.
Within the First Amendment reference is made to the attachment to that amendment, Schedule A as follows: "Schedule A labeled Members Interest is hereby amended as follows: See Schedule A Amendment dated December 12, 1995." Schedule A lists the eight people including Noe and Radding and for each lists their respective percentage membership interest. Radding's is shown as 1%. There is no language within the First Amendment, nor within Schedule A, from which the court can find that those persons listed on Schedule A, including Radding, did not become members on December 12, 1995.
On December 22, 1995, Radding signed a Workers Compensation Coverage Election form previously presented to him by Freedom Choice. The body of the form states, "Gregory Radding, a member of Freedom Choice Mortgage, LLC located at 30 West Main Street, Avon, Connecticut 06001, who am also a member, of said LLC, hereby elect to." CT Page 7126
The defendant contends that Radding did not become a member of Freedom Choice, LLC until December 28, 1995, the date on which he signed the Commissioned Loan Representative Agreement. Radding had been a loan representative since 1995. The execution of the Loan Representative Agreement did not effect any change in Radding's responsibilities or the terms and conditions of his position as a loan representative.
The defendant argues that the First Amendment of the Operating Agreement did not become effective as to any loan representative until the loan representative signed the Commissioned Loan Representative Agreement. However, this was not a position which the defendant took in the case of another of its employees, one Dale Ruth. Dale Ruth did not sign her agreement until February 6, 1996, and still received profit splitting and a bonus for 1996. Dale Ruth was provided with a K-1 in early 1996, showing she was a member of Freedom Choice, LLC for the tax year 1995. In both instances the defendant claimed oversight.
The plaintiff contends that it was not an oversight, that the more plausible explanation is that Radding and the other loan representatives listed on Schedule A to the First Amendment became members on December 12, 1995 and that the defendant acted accordingly in providing a K-1 to Dale Ruth in early 1996 indicating she was a member for 1995 and in paying Dale Ruth her bonus and profit splitting for 1996 in early 1997. We agree with the plaintiff's explanation and find ample support for this position in both the language of the agreement and from the actions of the defendant as regards Dale Ruth.
On the question of when a person ceased being a member of Freedom Choice, LLC, the agreement states, "a person ceases to be a member of the company upon the occurrence of any events of dissociation set forth in the Connecticut Limited Liability Act (the "Act"). The Act is set forth in C.G.S. § 34-180. None of the events listed in Sec. 34-180 apply in the instant case. The defendant contends the plaintiff voluntarily withdrew from his membership. Section 34-180 (a) states this can be done as provided for in Section 34-180 (a), which provides in relevant part:
 "Unless the operating agreement provides in writing that a member has no power to withdraw by voluntary act from a limited liability company, the member may do so at any time giving thirty days' written notice to the other members, or such other notice as provided for in writing in the operating agreement." Id.
The statute calls for written notice. Section 9.3 of the Operating Agreement does not provide for substitute notice. It is the plaintiff's CT Page 7127 contention that since he did not withdraw from his membership, he continues as a member through to the present time. However, the plaintiff is only claiming profit splitting and bonuses through 1998.
The defendant in addition to denying that the plaintiff was a member of Freedom Choice, LLC for one year before he left the company, pled in special defense that Radding voluntarily severed his relationship with Freedom Choice Mortgage, LLC prior to having been a member for one full year from the date he had become a member, and therefore was not entitled to any bonus or profit sharing.
From the facts found this court concludes that Radding became an ownership member of Freedom Choice on December 12, 1995. This was the date on which Noe and his wife with a 100% ownership interest between them, voted to make several of the loan representatives, including Radding, members with a 1% ownership interest.
On the claim of wrongful termination of employment this court finds that Radding left his employment as a result of a heated telephone conversation between Radding and Noe in which Noe demanded Radding provide some additional service on an account which Radding felt he had already provided. The message conveyed by Radding was that if Noe was going to continue to press him to do more, he would quit. Noe's response to this was that Radding was no longer welcome at his company. When Radding tried to see Noe the next day in his office Noe did not make himself available whereupon Radding cleaned out his desk and left the office to go to a funeral. He considered himself at that point no longer employed with Freedom Choice. This was on December 13, 1996.
Radding cannot be heard to complain that he was wrongfully terminated when he did not take the time to get back to Noe after the funeral to determine his employment status. Instead because Noe did not make himself immediately available when Radding appeared the next day at his office door, Radding packed up and left.
The third claim is a claim for double damages and attorney's fees premised on a violation of C.G.S. § 31-72.
The plaintiff contends that he was an employee from whom wages were withheld. Under the provisions of Section 31-72 when any employer fails to pay an employee wages, such employee may recover in a civil action twice the amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court. Section 31-72a (3) defines wages as meaning compensation for services rendered by the employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation. In the instant case the claim is for a production bonus in CT Page 7128 1996 and profit-sharing for the years 1996, 1997, and 1998.
In order to prevail as to this count the plaintiff must prove he was an employee working for Freedom Choice Mortgage and that the defendant Freedom Choice Mortgage was arbitrary, unreasonable and acted in bad faith in withholding the aforesaid payments. Sansone v. Clifford,219 Conn. 217 (1991); Crowther v. Gerber Garment Technology, Inc.,8 Conn. App. 254 (1986).
The court need not reach the issue of whether the plaintiff was an employee or independent contractor. On the facts found this court concludes that there was a good faith belief on the part of the defendant bolstered by the advice of counsel, that no production bonus or profit-sharing was due the plaintiff because he was not a member of the LLC, having left before completing the requisite one year.
Accordingly judgment may enter in favor of the plaintiff on the breach of contract claim. Judgment may enter in favor of the defendant on the wrongful termination claim and on the claim of violation of C.G.S. §31-72. Damages in the amount of $8,409.01 are awarded the plaintiff on the breach of contract claim.
Hennessey, J.